## Scott, Adm'r, *et al.*, Appellants, *v.* Calvit *et al.*

Where a demurrer to a bill was overruled and the bill subsequently amended
and new parties and new matters improperly joined: *Held*, the amended bill
was demurrable.

According to the well established principles of pleading in chancery, the heir
cannot join the administrator in an original bill for relief and for an account
of personal estate, for the rents and profits of land, or for the recovery of
land.

Under the statutes of this state adults have five years allowed them after the
probate of a will to contest it, and infants five years after they arrive at
age.

The statute makes the probate of a will conclusive evidence, and will not
suffer it to be contested after five years, or in case of an infant after five
years from the removal of his disability.

When the validity of a will has been contested in the manner pointed out by
the statute, the decree is absolute against all persons, infants as well as
adults, although all those interested were not parties to the proceeding.

APPEAL from the superior court of chancery.

The record shows that, on the 8th day of March 1836, William
Scott as the administrator of Eliza Lucretia Calvit filed his bill in
the court below against Sarah Calvit, James G. Wood and David
Hunt, in which amongst other matters he states that, in 1821
Thomas Calvit, under whom complainant's intestate claims title to
the estate sued for, made his last will and testament in which he
made certain specific bequests, but left the greater portion of his
estate undisposed of and in which he revoked all former wills.
Wood and Hunt with others who never qualified were made
executors; that a certain Samuel Calvit and said Eliza Lucretia
Calvit were the only heirs at law of the said Thomas Calvit.
The said Samuel died in 1826, having had possession of the estate
of his father from the time of his death. He made a will in which
his wife Sarah Calvit one of the defendants was made executrix.
Said Sarah took possession of the whole of the estate of the said
Samuel including that of the said Thomas Calvit. Eliza L. Calvit

[Scott, Adm'r, *et al.*, Appellants, *v.* Calvit *et al.*]

during all this time was an infant, and was such at the time of her death in 1833. The bill insists that she was entitled to one half of the whole estate of the said Thomas not disposed of in the will of 1821. Samuel Calvit however claimed the whole of the estate, and to enforce his claim filed a bill against the said Eliza L. Calvit and her guardians James G. Wood and David Hunt to perpetuate testimony and to obtain an injunction to restrain the orphans' court of Jefferson county from making distribution to said Eliza of the one half of the estate of the said Thomas Calvit, on the ground, as alleged, that by a will made by the said Thomas in 1818, the whole real and personal estate of the said Thomas was devised and bequeathed to the said Samuel Calvit, and that the will of 1821 was only intended to be a codicil to that of 1818. On this proceeding the chancellor, in pursuance of the statute, directed an issue to the country of *devisavit vel non,* which was found in favor of the said Samuel and the will of 1818 established as the last will and testament of the said Thomas, and the chancellor accordingly decreed a perpetual injunction against proceeding under the will of 1821, according to the prayer of the bill. The present bill charges that decree to be erroneous in many respects, and prays that it may be opened and the whole subject reinvestigated on its merits, and also prays an account, and a distribution to the complainant, &c. To this bill the defendant demurred, but the demurrer was overruled. It was afterwards amended by making the heirs at law, the present complainants, parties to the bill. To this amended bill the defendants also demurred, and the chancellor sustained the demurrer and dismissed the bill.

Grayson, for the appellants.

1. The last demurrer should have been overruled. Because, " after a demurrer overruled, another demurrer, the same in principle cannot be put in. And the reason is clear; for that is no more than calling upon the court to rehear the former judgment, in a manner contrary to the usual form." The proposition is, that the same demurrer, upon the same principle, shall not be twice used. 11 Vez. 71; 2 Scho. & Lef. 292; Mitford's Plead. Am. Ed. 139; 1

[Scott, Adm'r, *et al.*, Appellants, *v.* Calvit *et al.*]

P. Williams, 736; Blake's Chan. 47, 504; 1 Harrison's Chan. 367, 717, 92, 174; 2 Vez. 232; 3 Harr. and Johns. 77; 2 Mad. 459.

2. If the bill be considered as an original bill, it can be sustained upon the following positions:

1. Every correct decree against an infant, is rendered *nisi*, not absolutely.

2. The condition is, that the decree shall stand, unless the infant shall, within a given term, come into court, and show cause against such decree.

3. There is no authority limiting the infant to a particular form and manner, of exhibiting his showing. All that can be collected from the books, when directed particularly to this subject is, that an infant will be allowed to come in by petition to be allowed to file an answer, and such petition will be granted. And also, that he will be allowed to file an original bill for the same purpose. 2 Atkyns, 531.

4. Upon an application made by an infant for permission to show cause against a decree, it follows, as a matter of course, that the decree be opened, and the infant allowed to show such cause as he may deem fit.

5. There is no authority which circumscribes his causes to defects apparent upon the record or decree. But the *nisi* reservation made in all decrees against an infant, guarantees to him the right of reinvestigating the merits of the controversy.

The humanity of the law holds out to him the assurance, that his rights shall not be concluded by a decree when they are entrusted, by that law, to the superintendence of agents who may prove treacherous to him.

6. If an infant may come in by petition, and be permitted to file his answer, and have the cause reheard upon its merits, why, it is asked, may he not file an original bill for the same purpose, or for the purpose of rehearing, and further relief?

7. The general current of authorities in relation to the mode of setting aside decrees is not applicable to the case of an infant.

8. The decree *nisi*, which is generally made, is sufficient to show, that something more is reserved to him than the privilege of filing a bill of review for error on the face of the decree. For the right to reverse upon bill of review for error in the decree, he

[Scott, Adm'r, *et al.,* Appellants, *v.* Calvit *et al.*]

has, without its being reserved to him in the decree, as it is to all other persons. If the decree *nisi* means any thing, its design is to give the infant a privilege, and an extent of redress, beyond that secured to the ordinary class of litigants, and to be heard again upon the merits. 2 P. Wms. 401; 1 *Ibid,* 504.

9. By our statute, two years are prescribed, within which time a bill of review shall be filed, and not after. Six months are generally allowed in decrees against infants as the time within which cause must be shown against the decree. If the privilege secured to him in the decree, is permission to correct the errors apparent upon its face only, then his right to reverse in point of time, is more limited than that of an adult, who has two years, and the infant only six months after he arrives at age, which may happen within the six months or day given to show cause.

The reservation in the decree, it is therefore insisted, secures the right to be heard upon the whole merits of the cause.

3. Should the bill be considered as a combination of revivor, review and original, or in the nature of an original, it can still be sustained in the whole, or in part.

1. The two first and a supplemental bill may be combined. And a supplemental bill may be used to supply a defect in the original bill, and also to put a new matter in issue. It is, so far as the new matter is concerned, in the nature of an original bill. Mitford's Plead., Eng. Ed. 81; *Ibid.* 59; 1 Vez. 135; 5 Johns. Chan. Rep. 342; *Ibid.* 267.

2. A bill of revivor may also be in the nature of an original bill, and partake of its character. General relief may be asked by it. Mitford's Plead., Eng. Ed. 70, 71; *Ibid.* 81; 4 Paige Chan. Rep. 481.

4. But if the bill, by reason of its triple character, is defective, the demurrer should have been sustained to that part of the bill which has been improperly introduced, but not to the whole bill; for, as a bill of revivor, it is undoubtedly good. A bill may be filed with different aspects, that if one fail, the other may as effectually answer the purpose for which the bill was brought. 2 Atk. 325.

6. The complainants are properly joined as parties. Mitford's Plead., Eng. Ed. 74; 4 Cowen, 682; 5 Johns. Chan. Rep. 267.

[Scott, Adm'r, *et al.*, Appellants, *v.* Calvit *et al.*]

7. The issue found by the jury of *devisavit vel non*, and the decree thereon, are not conclusive, under the provision of the statute applicable to the will of 1821. Because, 1. The infant, Eliza L. Calvit, was not a party to the proceeding. It does not appear that she was served with process. It is true, her guardians appeared, and filed their answer. This, without a service of process on her, is not sufficient. There should have been a service of process on the infant and guardian. 2 Munf. 129; 4 Yerger, 318; *Ibid.* 231; Chitty's Eq. Dig. 540.

This first objection applies as strongly to the final decree as to the issue found by the jury.

2. The statute which must govern the issue found by the jury, is to be found in Turner's Dig. p. 447, sect. 34.

By this statute, the verdict upon an issue *devisavit vel non*, is not made final and conclusive. The will of 1821 was probated previous to the month of November, 1821, the month in which the provision in the Revised Code upon the subject was passed.

The chancellor who pronounced the decree, did not esteem the verdict conclusive—hence, the *nisi* clause in his decree.

8. The specific prayer of the amended bill is objected to; whether the specific prayer be consistent with the bill is not material. There is a prayer for general relief. If a bill, besides the usual prayer for general relief, contain a prayer for specific relief, the complainant is entitled to other specific relief, so far as it is consistent with the case stated in the bill. 1 Johns. Chan. Rep. 111.

9. Actual or seisin in deed by the ancestor, is not esteemed necessary in this state, to transmit an inheritance to an heir. The common law rule is not regarded, but seisin in law is all sufficient. This has been the received notion, by universal consent or usage, coeval with the existence of the territorial and state government. The word seisin has been regarded as meaning no more than "owning" or "entitled to." 8 Cranch, 229; *Ibid.* 248; Walker's Introduction, 324; 4 Mason, 447.

10. An infant has the right preserved by the law to show cause against a decree, (although he may have passed the age of majority, for many years since the decree,) up to the time of service of subpœna upon him to show cause. Chitty's Eq. Dig. 540.

[Scott, Adm'r, *et al.,* Appellants, *v.* Calvit *et al.*]

Winchester, *contra.*

1. The demurrer ought to have been sustained, and the bill dismissed, because it is an original bill, claiming under Lucretia Calvit, in the name of her administrator and heirs, a right to half of all the real and personal property of Thomas Calvit, deceased, undisposed of by the will of 1821; against Sarah Calvit, and Wood and Hunt; when in this very bill it appears that, in a former suit between Lucretia Calvit, by said Wood and Hunt, her guardians, defendants, and said Sarah Calvit, complainant by revivor, the very same real and personal property was decreed to be the property of Sarah Calvit.

A decree, signed and enrolled, is final and conclusive, as to all parties and privies, upon the matters in issue, and embraced in the decree, and cannot be collaterally inquired into, or impeached in another suit for the same matter between the same parties or their privies, except for fraud; but only by a bill of review for errors apparent, or facts discovered since the decree, or by appeal for erroneous judgment.

If not signed and enrolled, it can only be impeached by a supplemental bill, in nature of a bill of review, and which can only be for facts discovered since the decree. 3 Ves. 386; 13 *Ibid.* 564; 3 Atkyns, 811; *Ibid.* 629; 2 Maddock, 535, 537, 538; O'Brien *v.* O'Connor, 2 Ball & Beatty, 154; 1 Atkyns, 290; 3 Johns. Chan. Rep. 275; 4 *Ibid.* 85; 7 *Ibid.* 164; 6 *Ibid.* 235; 2 P. Wms. Rep. 73. Bill of review is never answered, but demurred to. Fraud is the only ground of exception, either of judgments at law, or decrees in equity, and whether the judgment or decree be against infants or adults. The very giving an infant a day in court to show cause, shows they form no exception to the rule.

The note in 1st P. Williams, copied into Blake's Chancery, is not authority. 2 Comyn, 414; 3 Vesey, 386.

2. But even if a decree might be impeached for error apparent, or erroneous judgment, in an original suit for the same matter, yet the demurrer here ought to be sustained, and the bill dismissed, because it seeks to impeach the finding of a jury, and the probate of a will, upon an issue out of chancery of *devisavit vel*

*non,* which our statute makes final and conclusive, without any saving to infants.   3 Atkyns, 629; 1 Vern. 295; 1 Ves. Jun. 283; Rev. Code, 32; 2 Comyn, 634; Eq. Cases, 138; *Ibid.* 128.

3. The demurrer ought to be sustained, and the bill dismissed; because, as originally filed, William Scott, in his statements in the bill, claims the undisposed real and personal property of J. Calvit, by a title in him as administrator of Eliza L. Calvit; and an amended bill making new parties, could not state a new case different from that in the original bill, and in fact it does not, as it adopts the prayer of the original bill, "that defendants may come to an account with William Scott, as administrator as aforesaid, for the property claimed by him as aforesaid." A bill cannot, by amendment, make a new case.   1 Johns. Chan. Rep. 184.

4. The demurrer ought to be sustained, and bill dismissed; because, if the third ground be otherwise construed, then the administrator of Lucretia Calvit, could not join as complainant for the personal property against Wood and Hunt as executors, and Sarah Calvit, along with the heirs of Lucretia Calvit, for the real property.

" The things sued for are of distinct natures, and their interests several and disconnected."  2 Comyn, 694; 2 Maddock, 176, 177; *Ibid.* 175; *Ibid.* 292, 294; 4 Johns. Rep. 204; 4 Cowen, 682; Fonblanque, 266, note.

5. The demurrer ought to be sustained, and bill dismissed; because, Hunt and Wood are made parties, defendants, and are called upon to make a discovery and account, as executors of Thomas Calvit, for all the undisposed residue, real and personal, in which they are nowhere charged with having intermeddled; and for which, as guardians, a decree was rendered against them as is shown by the bill.   2 Maddock, 292, 294; 4 Johns. Rep. 204.

6. The demurrer ought to be sustained, and bill dismissed; because, there are no errors apparent upon the face of the decree, for which the decree could be opened upon a bill of review.   2 Maddock, 537, 538; 2 Comyn, 694.

7. The demurrer ought to be sustained, and bill dismissed; because, complainants are not the next of kin of Eliza Lucretia Calvit, according to the true meaning of our statute, and the rules of common law descent.

[Scott, Adm'r, *et al.*, Appellants, *v.* Calvit *et al.*]

Mr. Justice TROTTER stated the case and delivered the opinion of the court.

1. The first objection which is made by the appellants to the judgment of the court below, is, that a first demurrer had been overruled, and therefore it was error to entertain a second one to the same bill. The judgment of the chancellor, which overruled the first demurrer, was, until reversed in the regular method, conclusive and binding, as much so as when pronounced upon any of the other questions which might arise in the cause, and it was, therefore, assuredly irregular to sustain the second demurrer, if it rested upon the same ground, and applied to the same proceedings. But there was an amendment which entirely changed the parties to the original bill, as well as the grounds of relief. In the original bill, the administrator alone sought to impeach the decree complained of. In the amended bill, the heirs at law are made complainants. Now it is certain that the grounds of relief are much widened by this amendment; as the administrator could only recover the personal estate, whereas the heirs seek the real estate, and the rents and the forfeits. The amended bill was, therefore, materially variant from the first, and we are of opinion that it was competent for the chancellor to entertain the second demurrer, if the new matter introduced by the amendment, was objectionable. Was it so? We think it was, and that, according to well established principles in pleading in chancery, the heir cannot join the administrator in a final bill for relief and for an account of personal estate, and of the rents and profits of land, or for the delivery of the title papers of real estate. There is no rule better settled than that the personal property of an intestate belongs to the administrator, and that the lands belong to the heir. The administrator cannot, therefore, sue for the land, nor can the heir maintain an action for the goods of the intestate. Have the parties upon the record in this case, a joint interest in the whole subject matter of the suit? Unquestionably they have not. If the heirs were to die pending this action, who is there upon the record to represent their interests? These principles have been repeatedly acted upon by the courts of chancery. In the case of Dunn *v.* Dunn, 2 Cond. Eng. Chan. Rep. 440, the complainant, who was an only son, and one of the heirs of the intes-

tate, united with his sisters in a bill against his mother, who was the administratrix, for an account of the intestate's real and personal property, and a demurrer for multifariousness was allowed. In Maud *v.* Acklom, in the same book, p. 441, the same principle was recognised, and the demurrer allowed. The counsel for the appellants, in answer to this objection, has referred us to the case of Fellows *v.* Fellows, 4 Cowen's Rep. 682; but that case settles no principle which conflicts with the views already presented. The court expressly recognises the general rule that a demand in the same bill of several matters, distinct and different in their nature, against several defendants, cannot be allowed. That case was held not to be embraced by this rule, because the defendants, though unconnected, had a common interest centering in the point in issue in the cause. In that case, the point in issue was the fraudulent combination of the defendants with the debtor of the complainant, to protect the property of the debtor against the claim of complainant, by a fraudulent purchase. The debtor had sold separate portions of the property to several distinct persons, and the creditor made them all defendants, and the court held that they were jointly answerable, because they had a common interest in the point in controversy. And this is the only effect of the determination of the court, in the case relied on in 5 Johns. Chan. Rep. 267; and was made, in part, the ground of the decision in the case in Cowen. We decided this question in the case of Browder *v.* Carmichael's Adm'r, at the present term, and we are satisfied with that determination.

Under this view of the case, we might content ourselves with an affirmance of the decree of the court below, without noticing the other grounds urged in support of the demurrer. But with a view of settling the merits of the cause, we will proceed to consider the principal objection to the present proceeding. It is urged that the decree of the court of chancery, which established the will of 1818, as the last will and testament of Thomas Calvit, under which Samuel Calvit derived his title to the whole of the property now claimed by the heirs of Lucretia Calvit, and which was founded on the verdict of a jury on the issue of *devastavit vel non,* is conclusive and binding upon all the world; and can never be impeached or inquired into in a collateral pro-

[Scott, Adm'r, *et al.,* Appellants, *v.* Calvit *et al.*]

ceeding, or in any new proceeding between the parties.   In
answer to this objection, it is insisted that Eliza L. Calvit was an
infant when that decree was pronounced, and is consequently not
bound by it absolutely, but is entitled to show cause against, or
to impeach it, and that by an original bill.   There can be no
doubt that, in every correct decree against an infant, there is a
*nisi causa* clause, and that the infant may, either before, or within
six months after arriving at age, be permitted to file a new
answer, or to impeach it by an original bill in the nature of a bill
of review.   The case of Casen *v.* Johnston, 1 Peere Williams,
736, is a full authority for this position.   That was the case of a
decree against a person who was insane, and therefore incompe-
tent to put in an answer, or protest his rights.   The chancellor
permitted him to show cause against the decree, and to impeach
it, because it was manifestly unjust and fraudulent; and he
remarks, generally, that the way for an infant to investigate a
decree which has been erroneously rendered against him, and
when the error is not in the judgment of the court, but in the
facts on which it was obtained, is, to file an original bill.   It is,
therefore, competent for an infant to proceed by original bill in
a proper case for setting aside a decree improperly obtained.
But it is said by the counsel for the appellees, that the verdict
and decree in this case, take it out of this general rule, and that
it is binding even upon infants.   It will be proper, therefore, to
consider what is the effect of a decree such as this?   The 29th
sect. of the orphans' court law, Rev. Code, p. 35, provides, that
when any will shall be exhibited to be proved, the court having
jurisdiction thereof, may proceed immediately to review the pro-
bate thereof, &c.    If, however, any person interested shall,
within five years afterwards, appear, and by his or her bill in
chancery, contest the validity of the will, an issue shall be made
up, whether the writing produced be the will of the testator or
not, which shall be tried by a jury, &c., whose verdict shall be
final between the parties.   The only saving in this section of the
act, is a power in the court to grant a new trial, and a right to
infants, &c., to contest the validity of the will in the manner pre-
scribed, the like period of five years after the removal of their
respective disabilities.   Adults, then, have five years allowed

them after the probate of the will; and infants five years after they arrive at age, to contest the validity of the will.

There is much reason why the verdict in this case should be final against all persons. It is to suppress interminable litigation, and to give repose and security to titles, and therefore it is held in England, that when the will is established by a verdict on the issue *devisavit vel non,* the court of chancery will declare it well proved, and that it ought to be established, and will grant a perpetual injunction. 11 Vez. 50, 52; 19 Vez. 499; Story's Equity, 673.

In the Ecclesiastical courts in England a decision upon the probate of a will of personal property is held conclusive to the full extent to which it has been admitted to probate. And it is also held to be not traversable but conclusive evidence of the will. With us, courts of probate have equal jurisdiction over a testament of personal and a will of real property. Our statute makes the probate of the will conclusive evidence, and will not suffer it to be contested after four years, or, in the case of an infant, after five years from the removal of his disability. And it must be evident that where the validity of the will is contested, in the manner pointed out by the act, either before or after probate, the decree is absolute against all persons. This was the view taken of the statute of Virginia, which is precisely in principle like ours, by the court of appeals in the case of Nalle *v.* Fenwick, 4 Rand. Rep. 588. Seven years is allowed by the act of Virginia to contest the validity of the will after probate, and if it is not done within that time, it is held conclusive forever. But there is no distinction, and there cannot from the very nature of the act be any distinction between adults and infants. The case of Hodges *et al. v.* Bauchman, 8 Yerger's Rep. 186, is a direct authority for the views here taken. That was a controversy respecting the validity of a will which had been admitted to probate in the county court of Sullivan county in Tennessee according to the provisions of the act of 1789 of that state. When the will was presented for probate, one of the heirs at law of the testator objected to its validity and at his instance an issue was made up according to the act of assembly to try the question. The issue was tried and found in favor of the validity of the will. Afterwards another of the heirs

filed his petition setting forth the fact that he and about twenty others were the heirs and distributees of the testator, and prayed that he on his own behalf and as guardian for five minors who were interested might be permitted to contest said will, and alleged that they had not been heard when it was admitted to probate. The executor pleaded the judgment of the county court on the issue of *devisavit vel non*, and the question submitted to the court was, whether this decision admitting the will to probate was binding upon the heirs who were not parties to the issue? It was decided in favor of the validity of the will. A writ of error was prosecuted, and the Supreme Court of Tennessee affirmed the decision of the court below. Judge Catron who delivered the opinion of the court observed that the question was, whether the verdict and judgment of the court of pleas and quarter sessions was conclusive upon all parties or only upon such as appeared in court and caused the issue to be made up. He says the proceeding is *in rem;* the probate is evidence of title without reference to parties. He says, and says truly, that the executor would be involved in interminable litigation, if every person interested in the estate could have a separate issue. It is essential to the practical efficiency of the courts of ordinary that their judgments in cases of probates should be binding in all courts, and if it were otherwise it might happen that some ten or twenty years after the trial, and after a distribution was had, their titles might be upturned. The act of assembly of Tennessee does not speak of parties, and the court in the case referred to, state that no such idea entered into the mind of the legislature. It is the duty of the court of probate to ascertain whether the will has been duly executed without reference to individuals interested. The probate is a proceeding for the ends of justice, of a public nature and conclusive on the whole world. This position is fully sustained by the cases referred to in the text in 1 Starkie's Ev. 241, where the rule is stated to be that the sentence or decree of a court of ordinary and probate, provided it be final in the court in which it is pronounced, is evidence against all the world, unless it can be impeached on the ground of fraud and collusion. It was insisted by the counsel for the appellants that the issue and decree founded thereon is not binding, because by the act of the legislature as it is found in Turner's Digest, p. 447,

[Scott, Adm'r, *et al.*, Appellants, *v.* Calvit *et al.*]

sect. 34, and which is the statute which must govern this question, the same is not made binding and conclusive.    The act referred to is in nearly the same language with that in the Revised Code, and though it does not by express enactment make the decree final, yet it is as much so upon the general principles which govern such decrees as if there had been an express provision to that effect.

The decree of the chancellor must therefore be affirmed, with costs to the appellees.